IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTELSAT GLOBAL SALES AND<br>   MARKETING, LTD., formerly known as<br>   INTELSAT UK, LTD.,<br><br>                  Plaintiff,<br><br>    v.<br><br>COMMUNITY OF YUGOSLAV POSTS<br>   TELEGRAPHS AND TELEPHONES<br><br>                Defendant. | **Civil Action Number<br>1:06CV00897 (RWR)**<br><br>Hon. Richard W. Roberts |

**PLAINTIFF'S POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS THE COMPLAINT, OR IN THE
<u>ALTERNATIVE, TO COMPEL ARBITRATION</u>**

## TABLE OF AUTHORITIES

**Cases**

AT&T Technologies, Inc. v. Communication Workers, 475 U.S. 643 (1986)............................19

BCS Insurance Co. v. Wellmark, Inc., 410 F.3d 349 (7th Cir. 2005)..............................................22

*Belgrade v. Sidex Int'l Furniture Corp., 2 F.Supp. 2d 407 (S.D.N.Y. 1998) ...............................7

Bombardier Corp. v. National Railroad Passenger Corp., 298 F.Supp.2d 1 (D.D.C. 2002) .........21

Booker v. Robert Half Int'l Inc. 315 F.Supp.2d 94 (D.D.C. 2004) ...............................................18

Colorado River Water Conservation District v. United States, 424 U.S. 800 (1976) ....................9

Eckert Int'l, Inc. v. Government of the Sovereign Democratic Republic of Fiji, 32 F.3d

77 (4th Cir. 1994)...........................................................................................................15

Filus v. LOT Polish Airlines, 907 F.2d 1328 (2d Cir. 1990)..................................................14, 16

Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438 (D.C. Cir 1990) ..........14, 16

*Gates v. Victor Fine Foods, 54 F.3d 1457 (9th Cir.), cert. denied, 516 U.S. 869 (1995)...9, 12, 13

Group Hospitalization and Medical Services, Inc. v. Stubbs, 1990 WL 183576 (D.D.C.

November 1, 1990) .........................................................................................................21

Held v. Nat'l Railroad Passenger Corp., 101 F.R.D. 420 (D.D.C. 1984).....................................20

Howsam v. Dean Witter Reynolds, 537 U.S. 79 (2002)................................................................18

*M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972) ....................................................17, 19

Marlowe v. Argentine Naval Commission, 604 F.Supp. 703 (D.D.C. 1985)................................15

Marra v. Papandreou, 216 F.3d 1119 (D.C.Cir. 2000) ................................................................19

Mitsui & Co. (USA) Inc. v. Mira M/V, 111 F.3d 33 (5th Cir 1997) ..............................................17

Northwestern National Ins. Co. v. Donovan, 916 F.2d 372 (7th Cir. 1990)..................................17

Overseas Partners, Inc. v. PROGEN Musasirlik ve Yoneti Hizmetleri. Ltd., 15 F.Supp.2d

   47 (D.D.C. 1998) ........................................................................................17, 19

Pere v. Nuovo Pignone, Inc., 150 F.3d 477 (5th Cir. 1998), cert. denied, 525 U.S. 1141 ..............9

RCA Global Communications, Inc. v. FCC, 758 F.2d 722 (D.C.Cir. 1985)...................................9

*Republic Steel Corp. v. Maddox, 379 U.S. 650 (1965) ...............................................................20

Satcom Int'l Group PLC v. Orbcomm Int'l Partners, 49 F.Supp. 2d 331 (S.D.N.Y. 1999)..........22

Stone v. Doerge, 328 F.3d 343 (7th Cir. 2003).....................................................................20, 22

Summit Packaging Systems, Inc. v. Kenyon & Kenyon, 273 F.3d 9 (1st Cir. 2001)...............19, 22

*Verlinden BV v. Central Bank of Nigeria, 461 U.S. 480 (1983)..........................................6, 7, 8

Volt Information Science, Inc. v. Board of Trustees of Leland Stanford Jr. University,

   489 U.S. 468 (1989)................................................................................................19

Zweiter v. Brazilian Nat'l Superintendency of Merchant Marine, 833 F.Supp.

   1089(S.D.N.Y. 1993) ........................................................................................10

**Statutes**

*28 U.S.C. §1330.....................................................................................................................3

*28 U.S.C. §1602.................................................................................................................3, 6

*28 U.S.C. §1603.....................................................................................................................2

*28 U.S.C. §1605...........................................................................................................3, 6, 14

*Agreement relating to the International Telecommunications Satellite Organization

   (INTELSAT) (August 20, 1971), 23 U.S.T. 3813, TIAS No. 7352 .........................................11

**Other Authorities**

Cullen International, "Report 1, Country Profiles: Supply of Services In Monitoring Of

    South East Europe – Telecommunications Services Sector and Related Aspects,"

    (August 20, 2005) ...................................................................................................................11

Foreign Relations Council, "Proposal for Improvement of the Investment Climate in

    Serbia" (2004).........................................................................................................................11

Gospic, N., Jankovic, M., and Odadzic, B., "Yugoslav Telecommunications Markets:

    Vision and Potential," IEEE Communications Magazine (August 2000) .................................11

H.R. Rep. No. 94-1487 at 15-16 (1976), reprinted in U.S.C.C.A.N. 6604, 6614....................12, 13

Plaintiff Intelsat Global Sales and Marketing, Ltd., by counsel, respectfully submits this Opposition to defendant Community of Yugoslav Posts Telegraphs and Telephones' Motion to Dismiss the Complaint, Or In The Alternative, To Compel Arbitration. This matter is properly before this Court, as the Court has subject matter jurisdiction under the Foreign Sovereign Immunities Act, and the parties agreed that this Court should have jurisdiction over this dispute. The Motion must be denied.

<u>STATEMENT OF FACTS</u>

Plaintiff Intelsat Global Sales and Marketing, Ltd., formerly known as Intelsat UK, Ltd. ("Intelsat Global"), is a corporation existing under the laws of the United Kingdom. Intelsat Global is the successor in interest to certain contractual rights of the International Telecommunications Satellite Organization ("INTELSAT"), an international organization established by the Agreement Relating to the International Telecommunications Satellite Organization, an international treaty dated August 20, 1971.

At the time the Complaint was filed, Defendant Community Yugoslav Post Telegraph and Telephone ("CYPTT") was a corporation existing under the laws of the Republics of Serbia and Montenegro, with its principal place of business in Belgrade, Serbia. During the time of the acts described in the Complaint, CYPTT was an

instrumentality of the government of the Republics of Serbia and Montenegro, as defined in 28 U.S.C. §1603.[1]

In the late 1990s, INTELSAT and CYPTT entered into a number of agreements ("the Service Contracts"). Pursuant to those Service Contracts, INTELSAT agreed to provide to CYPTT certain long-term satellite telecommunications services, and CYPTT agreed to pay for such services.

On July 18, 2001, INTELSAT, Intelsat Global, and CYPTT entered into a Novation Agreement ("Novation Agreement"). [2] Under the terms of the Novation Agreement, the parties agreed to transfer all of INTELSAT's rights and duties under the Service Contracts, including the right to all payments, from INTELSAT to Intelsat Global.[3] Intelsat Global agreed to assume all obligations of INTELSAT to provide CYPTT with telecommunications services under the Service Contracts, and CYPTT agreed to pay to Intelsat Global the charges and fees for such services as provided in the Service Contracts and the Novation Agreement, and agreed to pay all invoices issued by Intelsat Global for such services. The Novation Agreement contained a merger clause.

Pursuant to the Novation Agreement and the Service Contracts, as of April 5, 2005, plaintiff has issued invoices totaling $12,835,670.89 to defendant, which invoices defendant has failed to pay. On December 23, 2005, pursuant to the Novation Agreement and Service Contracts, due to defendant's failure to pay for plaintiff's services, plaintiff

---

[1]    Prior to February 2003, Serbia and Montenegro was known as the Federal Republic of Yugoslavia.

[2]    A copy of the Novation Agreement is attached to the Complaint as Exhibit 1.

[3]    At the time the Novation Agreement was executed, Intelsat Global was known as Intelsat UK, Ltd.

terminated the Novation Agreement and all Service Contracts between plaintiff and defendant. Under the terms of the Novation Agreement and Service Contracts, all amounts due from defendant to plaintiff under the remaining term of the Service Contracts became immediately due and payable at that time.

Pursuant to the Novation Agreement and the Service Contracts, as of January 25, 2005, defendant owes plaintiff the sum of $12,835,670.89 without right of setoff, together with interest due thereafter, and the costs of collection. Despite repeated demand for payment, defendant has failed to make payments as due.

ARGUMENT

CYPTT apparently wishes the Court to believe that it is unsettled law as to whether a foreign company may bring suit against a foreign defendant in a United States district court under the Foreign Sovereign Immunities Act. It is not. A unanimous Supreme Court held over twenty years ago that the citizenship of the parties is irrelevant under the FSIA if the requirements of the Act are met.

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1330, as defendant was at relevant times an instrumentality of the government of Serbia and Montenengro as defined in the Foreign Sovereign Immunities Act, 28 U.S.C. §1602 et seq. ("FSIA"). CYPTT has waived its immunity from the jurisdiction of United States courts as defined in 28 U.S.C. §1605(a)(1) by agreeing in the Novation Agreement 1) to submit to the exclusive jurisdiction of the courts of the District of Columbia and 2) to have the Novation Agreement interpreted by the law of the District of Columbia.

CYPTT also has been engaged in commercial activity that causes a direct effect in the United States as defined in 28 U.S.C. §1605(a)(2).

Jurisdiction and venue in this Court is proper, as CYPTT has irrevocably consented to the jurisdiction of this court.  The Novation Agreement that is the subject of this breach of contract dispute provides in paragraph 9:

> This Agreement and the relationship between the Contracting Parties shall be governed by and construed in accordance with the laws of the District of Columbia. U.S.A. *and the Contracting Parties hereby submit to the <u>exclusive jurisdiction</u> of the District of Columbia courts or any United States Federal Court sitting in the District of Columbia.*

Complaint, Exhibit 1, ¶ 9 (emphasis supplied.)

The Novation Agreement also incorporates by reference Intelsat's standard Terms and Conditions for Novated Contracts.  CYPTT has attached those Terms and Conditions to its Motion.  CYPTT's argument is premised on paragraph 17 of those Terms and Conditions, which provide for the possibility that a party *may*, but is not required to, refer a dispute to arbitration:

> The Customer and the Company agree to endeavor to settle all disputes, controversies or claims arising under the Agreement, or in connection with services provided pursuant to this Agreement, within sixty (60) days, or such longer period as may be mutually agreed upon, from the date that either party has given written notice of the existence of such dispute, controversy, or claim to the other.  If within such time the Customer and the Company have not been able to reach settlement, either party <u>may</u> submit the dispute, controversy or claim for settlement by arbitration in accordance with the Rules of Arbitration of the International Chamber of Commerce in effect on the date of the Agreement before a panel of three arbitrators designated pursuant to those rules and the decision shall be binding on the Customer and the Company. . . Any party to this Agreement may seek from a court of the District of Columbia or a United States Federal Court sitting in the District of Columbia any interim relief, including injunctive relief or confirmation of any arbitral award rendered in whole or in part.

Emphasis supplied.  The Terms and Conditions further provide in Paragraph 22:

> All rights and remedies conferred hereunder or otherwise shall be cumulative and may be exercised individually or concurrently.

CYPTT contends that Section 17, which provides that a party "<u>may</u>" refer a dispute to arbitration, is actually mandatory.[4]  Under the cases cited by CYPTT, and the precedents of this Court, CYPTT's motion must be denied.  The main body of the Novation Agreement provides that the parties submit to the "exclusive" jurisdiction of the courts of the District of Columbia.  While the Terms and Conditions, an attachment to the Novation Agreement, provide a party the option to choose arbitration, it is overreaching and incorrect for CYPTT to claim that arbitration is mandatory, not optional.  CYPTT hopes that the Court reads "may" to mean "shall," and chooses not to bring to the Court's attention Paragraph 22 of the Terms and Conditions, which specifically provides that all rights and remedies are cumulative and may be exercised individually or concurrently.  CYPTT's meritless Motion must be denied.

---

[4]    CYPTT argues, without success, that the Court should not apply the Novation Agreement, but rather only the Terms and Conditions that are attached to and incorporated into the Novation Agreement.  CYPTT chooses to ignore the fact that the Novation Agreement governs the relationship between the parties after its execution, and even ignores the Novation Agreement's merger clause:

> As of the Closing, this Agreement, including the Terms and Conditions, shall amend and supercede in their entirety all other previous agreements, arrangements, and understandings between the Contracting Parties, whether written or oral, relating to the provision of such services to the Customer.

Novation Agreement, ¶ 3.  CYPTT is one of the Contracting Parties, and thus cannot choose only certain parts of the Novation Agreement to abide by.

5

I.    This Court has subject matter jurisdiction under the FSIA.

Prior to the enactment of the Foreign Sovereign Immunities Act ("FSIA"), a foreign nation and its agencies and instrumentalities generally had been granted sovereign immunity in United States courts. The FSIA, 28 U.S.C. §1602 et seq., provides certain exceptions to that immunity. See 28 U.S.C. §1605, 1607. Thus, if CYPTT is an instrumentality of a foreign government, and one of the exceptions of the Act applies, CYPTT is liable to suit in this Court under the Act.

CYPTT engages in a lengthy discussion of constitutional law, arguing that this Court may not even hear this case, on the grounds that both the plaintiff and defendant are foreign entities, and the Court's Article III jurisdiction cannot be construed to encompass this claim. Fortunately for the Court, but unfortunately for CYPTT, this is not a matter of first impression, but well-settled law, resolved over two decades ago by the United States Supreme Court.

In Verlinden BV v. Central Bank of Nigeria, 461 U.S. 480 (1983), Verlinden, a Dutch corporation, entered into a contract with the Federal Republic of Nigeria to sell cement to Nigeria. Pursuant to the contract, Nigeria was to establish a letter of credit for the purchase price in Amsterdam. Nigeria used its own Central Bank of Nigeria for that purpose. Before the contract could be completed, Central Bank threatened to revoke the letter of credit if certain conditions were not met. Verlinden sued the Central Bank of Nigeria in federal court in New York under the FSIA.

The district court dismissed the case, and the Second Circuit affirmed the dismissal, holding that an action by a foreign plaintiff against a foreign defendant

6

exceeded the scope of federal court jurisdiction under Article III of the United States

Constitution.  A unanimous Supreme Court reversed:

> By reason of its authority over foreign commerce and foreign relations
> Congress has the undisputed power to decide, as a matter of federal law,
> whether and under what circumstances foreign nations should be
> amenable to suit in the United States…To promote these federal interests,
> Congress exercised its Art. I powers by enacting a statute
> comprehensively regulating the amenability of foreign nations to suit in
> the United States… Accordingly, an action against a foreign sovereign
> arises under federal law for purposes of Art. III jurisdiction.

Id. at 493.  The Court then remanded the case to determine if one of the FSIA exceptions

applied to the case.

Verlinden's holding is not in dispute:  "If an action satisfies the substantive

standards of the Act, it may be brought in federal court regardless of the citizenship of the

plaintiff."  Id. at 490-1.  The citizenship of the plaintiff is irrelevant to the determination

of whether the FSIA applies.  If the requirements of the statute are met, then federal

courts have jurisdiction to hear the claim, regardless of the nationality of the plaintiff. [5]

CYPTT's argument simply ignores established Supreme Court precedent.

In Belgrade v. Sidex Int'l Furniture Corp., 2 F.Supp. 2d 407 (S.D.N.Y. 1998), the

court, citing Verlinden, rejected the very argument that CYPTT makes here.

> Jugobanka asserts that the Court lacks jurisdiction…The basis for this
> assertion is that Slovenjiales and Jugobanka each are foreign entities and
> the actions complained of occurred entirely within the territory of the
> [Federal Republic of Yugoslavia (Serbia and Montenegro]  This argument,
> however, is without merit.
> *       *       *       *       *       *       *       *       *
> The Supreme Court explicitly held in Verlinden BV v. Central Bank of
> Nigeria that "a foreign plaintiff may sue a foreign sovereign in the courts
> of the United States, provided the substantive requirements of the Act are
> satisfied."

---

[5]      Obviously, under the FSIA, the potential defendant will always be a foreign entity.

Id at 419-420 (footnotes omitted.)

The Belgrade court went on to apply the holding in Verlinden to dismiss every argument that CYPTT makes here. In response to the argument that federal courts would become international courts of claim, the court stated:

> The [Verlinden] Court went on to note, however, that Congress has guarded against this danger "not by restricting the class of potential plaintiffs, but rather by enacting substantive provision requiring some form of substantial contact with the United States." By this, the Court referred to the sovereign immunity provision of the FSIA. Thus, in suit against a foreign state by a foreign plaintiff, *jurisdiction exists if a waiver of sovereign immunity has occurred.*

Id. at 419 (emphasis supplied, footnotes omitted.)

Thus, the Court need not wrestle with CYPTT's lengthy constitutional law analysis. Verlinden is the law of the land, and holds that the citizenship of the parties is irrelevant: if the substantive requirements of the Act are met, then this Court has subject matter jurisdiction.

CYPTT also argues separately that CYPTT is not subject to personal jurisdiction in this Court. Again, CYPTT misconstrues the nature and scope of the FSIA. The FSIA itself provides the grant of personal jurisdiction over agencies and instrumentalities of foreign governments. See Verlinden, 461 U.S. at 485, n. 5; 28 U.S.C. 1330(b). There is no separate inquiry about personal jurisdiction or minimum contacts. If the requirements of the Act are met, then the Court has both subject matter jurisdiction and personal jurisdiction.

Under Verlinden, the Court's inquiry is simple. If CYPTT is an instrumentality of a foreign government, and one of the statutory exceptions to immunity applies, then the Court has both subject matter and personal jurisdiction, and cannot dismiss. Federal

8

courts have an "almost unflagging" duty to exercise the jurisdiction given them.

Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976).

A.  CYPTT is an instrumentality of a foreign government.

CYPTT is an instrumentality of a foreign government as defined in the Act.
CYPTT is or was the PTT for the nation of Serbia and Montenegro.  A PTT, or Post,
Telegraph and Telephone, is by its very nature a quasi-governmental agency.  See
Affidavit of Yuli Wexler, §6, attached as Exhibit A.  Cf. RCA Global Communications,
Inc. v. FCC, 758 F.2d 722, 725 (D.C.Cir. 1985) (discussion of PTTs).

To qualify as an instrumentality subject to the FSIA, CYPTT must be either an
"organ" of a foreign government, or be majority-owned by a foreign government.  28
U.S.C. 1603(b)(2); Gates v. Victor Fine Foods, 54 F.3d 1457, 1461 (9th Cir. 1995).  If
either condition is met, CYPTT is an agency or instrumentality of a foreign state, and
thus potentially subject to jurisdiction under the FSIA.

For purposes of determining whether a defendant is a governmental agency under
the FSIA, the relevant time period of inquiry is not when the complaint was filed, but
when the acts and events underlying the complaint occurred.  Pere v. Nuovo Pignone,
Inc., 150 F.3d 477 (5th Cir. 1998), cert. denied, 525 U.S. 1411; General Electric Capital
Corp. v. Grossman, 991 F.2d 1376 (8th Cir. 1993).  Plaintiff is unaware of whether any
government owned any shares of CYPTT at the time of the acts described in the
Complaint.  Nonetheless, it is clear that CYPTT was at relevant times an organ of a
foreign government.

9

CYPTT's Declaration sheds no light on the subject. CYPTT's only response to the allegations of the Complaint regarding CYPTT's governmental status is an affidavit which on its face is immaterial and may not be considered. The affidavit of Mr. Matejic declares that CYPTT is a Serbian Business Association, and attaches a copy, and translation, of its registration with the government of Serbia. Unfortunately, whatever entity Mr. Matejic works for and is describing in his Declaration, it is undoubtedly not the entity that entered into the Novation Agreement or the Service Contracts. According to Mr. Matejic's affidavit, the "CYPTT" he describes came into existence on December 18, 2002, approximately one and a half years after the Novation Agreement was signed by CYPTT. Complaint, Exhibit 1. The Novation Agreement was executed on July 18, 2001, and it incorporated by reference pre-existing contracts between CYPTT and Intelsat. Whatever entity Mr. Matejic purports to be describing, it is by his own affidavit <u>not</u> the entity that signed the agreements upon which Intelsat is suing. Thus, the entire affidavit of Mr. Matejic must be disregarded.[6] Thus, CYPTT has adduced no evidence at all to challenge the allegations of the Complaint.

What we do have available is CYPTT's own prior admission that it performs governmental, regulatory tasks. <u>See</u> <u>Zweiter v. Brazilian Nat'l Superintendency of Merchant Marine</u>, 833 F.Supp. 1089, 1092 (S.D.N.Y. 1993) (agency empowered to issue regulations over marine transportation issues is an "organ" for FSIA purposes). In an August 2000 article published in IEEE Communications, Dr. Milan Jankovic, the current Director General of CYPTT, stated:

---

[6]     Plaintiff is not certain as to what entity Mr. Matejic refers, or its relationship, if any, with the CYPTT that entered into the contracts with Intelsat.

> In the present situation, apart from the Federal Ministry of
> Communications responsible for licenses, spectrum management, and so
> on, the Community of Yugoslav PTT is also involved in regulatory issues.
> Its main fields of responsibility cover technical regulations, homologating,
> interconnection, and universal service. At the same time, as the association
> of operators, the Community of Yugoslav PTT deals with international
> accounting, traffic routing, and joint telecommunications capacity
> planning.

Gospic, N., Jankovic, M., and Odadzic, B., "Yugoslav Telecommunications Markets:

Vision and Potential," IEEE Communications Magazine, pp. 112-116 (August 2000),

attached as Exhibit B.[7]

CYPTT's admission is supported by other sources.  Indeed, upon information and

belief, CYPTT publishes or published an Official Gazette containing rules governing

telecommunications in Serbia and Montenegro and its predecessors.  See Cullen

International, "Report 1, Country Profiles: Supply of Services In Monitoring Of South

East Europe – Telecommunications Services Sector and Related Aspects," (August 20,

2005), p. 86, 92, attached as Exhibit C, (CYPTT established by Yugoslavian legislation

and acts as regulatory body); Foreign Relations Council, "Proposal for Improvement of

the Investment Climate in Serbia," (2004) p. 73, attached as Exhibit D.

Moreover, CYPTT was appointed by the government of Yugoslavia in 1971 to be

its representative Signatory to Agreement relating to the International

Telecommunications Satellite Organization (INTELSAT), a multilateral treaty.

Agreement relating to the International Telecommunications Satellite Organization

(INTELSAT) (August 20, 1971), 23 U.S.T. 3813, TIAS No. 7352.  It is difficult to see

how CYPTT can claim to not be an instrumentality of a government when it was

---

[7]     The accompanying Figure 1 to Dr. Jankovic's article indicates that CYPTT alone
is at the "Regulatory" level in the telecommunications sector of Serbia and Montenegro.
Id., p. 113, Figure 1.

appointed to act as Yugoslavia's governmental representative for purposes of a multilateral treaty.

Indeed, in the letter attached as Exhibit B to the Wexler Affidavit, Dr. Jankovic, dated November 20, 2005, CYPTT's Director General admits that CYPTT is an agent of the government.  Dr. Jankovic states that CYPTT's shares in Intelsat should be repaid to CYPTT "being obliged to immediately pay these funds in the budget of the Government as real owner of the shares.  The Community of Yugoslav PTT was entitled by the Government to manage these mentioned shares."  Thus, CYPTT's Director General admits that CYPTT is, or was, an instrumentality of the government of Serbia and Montenegro, appointed by that government to manage the government's shares in Intelsat. [8]

Nor does CYPTT's claim to be a trade association make any difference for purposes of FSIA analysis.  The FSIA's legislative history suggests that the terms "organ" and " agency or instrumentality" are to be read broadly.  <u>Gates v. Victor Fine Foods</u>, 54 F.3d 1457, 1460 (9th Cir.), <u>cert. denied</u>. 516 U.S. 869 (1995).  The House Report on the Act describes entities which meet the definition of agency or instrumentality as including state trading corporations, mining enterprises, transport organizations such as a shipping line or airline, or export associations. H.R. Rep. No. 94-1487 at 15-16 (1976), reprinted in U.S.C.C.A.N. 6604, 6614.   It is not necessary for a company's employees to be civil servants for a finding that it is a state organ, or for the state to be directly involved in the day-to-day operations of the company.

---

[8]     The letterhead of CYPTT  itself states:  "Serbia and Montenegro COMMUNITY OF YUGOSLAV POSTS TELEGRAPHS AND TELEPHONES."

In Gates, the Ninth Circuit found that a Canadian marketing board established by the Canadian province of Alberta was a foreign instrumentality under the FSIA. The board was established by Canadian legislation to market Canadian pork, and was authorized to promulgate regulations on pork producers.[9]  The board was supported, not by the government's funds, but by a service charge paid by pork producers in Alberta. Nor did the government of Alberta exercise day-to-day control over the board's activities. Nonetheless, the Ninth Circuit had no difficulty in holding that the board was an organ of a foreign state under the FSIA.

CYPTT also claims that it is a for-profit entity and therefore cannot be subject to the FSIA.  Contrary to CYPTT's claim, the fact that it seeks to make a profit is precisely one of the factors that makes CYPTT subject to the FSIA.  Commercial activity by an agency of a foreign state is one of the very indicia that establishes liability under the FSIA.  See 28 U.S.C. 1605(a)(2).  As noted above, the legislative history of the Act indicates that a government's for-profit enterprises are precisely the type of entities that the Act's scope was designed to reach.  H.R. Rep. No. 94-1487 at 15-16 (1976), reprinted in U.S.C.C.A.N. 6604, 6614.  Thus, the fact that CYPTT seeks to make a profit does not defeat jurisdiction, but rather militates in favor of jurisdiction.

In short, plaintiff's allegations regarding CYPTT's status are unrefuted by competent proof by CYPTT, and more than borne out by the evidence adduced in this Opposition.  In any event, should there be any doubt of whether CYPTT is or is not a state instrumentality or otherwise subject to the FSIA, plaintiff is entitled to discovery as

---

[9]    Upon information and belief, CYPTT was also established by legislative act of the Yugoslavian government for regulatory purposes.

to CYPTT's status before the Court rules on the motion to dismiss.  <u>Foremost-McKesson, Inc. v. Islamic Republic of Iran</u>, 905 F.2d 438 (D.C. Cir 1990); <u>Filus v. LOT Polish Airlines</u>, 907 F.2d 1328 (2d Cir. 1990).

B.  <u>CYPTT has waived its immunity under the FSIA</u>.

By its own admissions, it is clear that CYPTT was an agency or instrumentality of the government of Serbia and Montenegro.  Under 28 U.S.C. §1605, a foreign instrumentality can be found subject to the provisions of the Act if any of seven separate exceptions are found to apply.  In this case, only the first two are necessary to the analysis:

> **(a)** A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—
> **(1)** in which the foreign state has waived its immunity either explicitly or by implication, notwithstanding any withdrawal of the waiver which the foreign state may purport to effect except in accordance with the terms of the waiver;
> **(2)** in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States:….

If either of these sections is found to apply, then there is no sovereign immunity for the foreign agency.

Express waiver is found where a foreign government agrees to submit to the jurisdiction of a United States Court.  CYPTT has done so, in the above paragraph, for any dispute relating to the "relationship between the Contracting Parties."  The FSIA thus applies, and CYPTT is subject to suit in this Court.  In addition, if an organ of a foreign government merely enters into a contract containing a choice of law provision choosing

14

United States law, then that organ is deemed to have impliedly waived sovereign immunity under Section 1605(a)(1).  Eckert Int'l, Inc. v. Government of the Sovereign Democratic Republic of Fiji, 32 F.3d 77 (4th Cir. 1994); Marlowe v. Argentine Naval Commission, 604 F.Supp. 703 (D.D.C. 1985).  The Novation Agreement signed by CYPTT contains the clause:

> This Agreement and the relationship between the Contracting Parties shall be governed by and construed in accordance with the laws of the District of Columbia. U.S.A. and the Contracting Parties hereby submit to the exclusive jurisdiction of the District of Columbia courts or any United States Federal Court sitting in the District of Columbia.

CYPTT has agreed to this Court's exclusive jurisdiction and has agreed to the application of the law of the District of Columbia.  Thus, it is simply indisputable that CYPTT has waived its sovereign immunity and accordingly is subject to this Court's jurisdiction.


C.      CYPTT's commercial activities have a direct effect in the United States.

In addition to CYPTT's clear and unmistakable waiver of sovereign immunity in the Novation Agreement, jurisdiction under the FSIA also may be had on an alternative ground:  that CYPTT's commercial activity outside the United States had a direct effect in the United States.  CYPTT entered into the contracts that are at issue here to purchase satellite telecommunications services from Intelsat.  The purpose of those services is to carry telecommunications from Serbia and Montenegro to the rest of the world, and to carry telecommunications from the rest of the world to Serbia and Montenegro.  Those telecommunications by their very nature include telecommunications between the United States and Serbia and Montenegro.

15

As a necessary part of its function as a telecommunications carrier, CYPTT, either directly or indirectly, both paid funds to and received funds from United States entities for its role in transmitting international calls between Serbia and Montenegro and the United States. See Wexler Affidavit, ¶ 8. Thus, its activities had a direct effect in the United States. Thus, the Court may find jurisdiction under either Section 1605(a)(1), due to CYPTT's waiver, or under Section 1605(a)(2), due to CYPTT's commercial activities.

In sum, there is no real dispute that CYPTT was an organ of a foreign state. It has been the representative of Yugoslavia in an international treaty and to an international body. Its Director General has admitted that it functions as a regulatory body for Serbia and Montenegro, and that it has acted as the agent for Serbia and Montenegro in its relationship with Intelsat. The affidavit of Mr. Matejic bears no relation to this case. It is equally inarguable that CYPTT has not waived its sovereign immunity by agreeing to this Court's jurisdiction and by agreeing to use D.C. law in the Novation Agreement. Accordingly, the Court must deny the Motion to Dismiss.

In any event, should there be any doubt of whether CYPTT is or is not a state instrumentality or otherwise subject to the FSIA, the Court should permit discovery as to CYPTT's status before ruling on the motion to dismiss. Foremost-McKesson, Inc. v. Islamic Republic of Iran, 905 F.2d 438 (D.C. Cir 1990); Filus v. LOT Polish Airlines, 907 F.2d 1328 (2d Cir. 1990) (improper to dismiss before discovery permitted on jurisdictional FSIA issues). Plaintiff moves for such discovery in the alternative that the Court is inclined to grant the Motion to Dismiss.

II.     <u>CYPTT has consented to jurisdiction in this Court, and is barred from</u>
<u>raising a forum non conveniens argument.</u>

CYPTT has the effrontery to ask this Court to dismiss this case on <u>forum non</u>
<u>conveniens</u> grounds <u>when it consented to the exclusive jurisdiction of this Court.</u>  This
argument is patently frivolous.  Further aggravating the frivolity of the motion, CYPTT
cites numerous cases, not one of which involves a forum selection clause.

The Supreme Court has held that forum selection clauses are to be enforced
absent a showing that enforcement would be unreasonable and unjust, or that the clause is
invalid for fraud or overreaching.  <u>M/S Bremen v. Zapata Off-Shore Co</u>., 407 U.S. 1
(1972).  Increased cost or convenience to a party are insufficient reasons to invalidate a
forum selection clause.   <u>Mitsui & Co. (USA) Inc. v. Mira M/V</u>, 111 F.3d 33 (5th Cir
1997).  A party that agrees to a mandatory forum selection clause thereby waives
objections to venue on the basis of cost or inconvenience to itself.  <u>Northwestern National</u>
<u>Ins. Co. v. Donovan</u>, 916 F.2d 372, 375 (7th Cir. 1990).  <u>See</u> <u>also</u> <u>Overseas Partners, Inc.</u>
<u>v. PROGEN Musasirlik ve Yoneti Hizmetleri. Ltd</u>., 15 F.Supp.2d 47 (D.D.C. 1998) (any
obstacles to enforcement of forum selection clause were foreseeable by the parties at the
time they agreed to the clause).

To steal a page from CYPTT's brief, CYPTT consented to litigation in this Court,
and any argument that this Court is inconvenient would be specious.  Whatever
inconvenience or costs CYPTT claims it will suffer were foreseeable at the time it
entered into the contract, and cannot now be raised as the basis for a <u>forum</u> <u>non</u>
<u>conveniens</u> argument.  <u>Cf</u>. <u>Bremen</u>.  CYPTT has not, and cannot, show that the forum
selection clause consenting to this Court's exclusive jurisdiction is the product of fraud or
overreaching.  Moreover, CYPTT fails to suggest any suitable alternative forum.  As

17

noted below, arbitration in the ICC cannot be compelled and thus does not qualify as an alternate forum.

The parties bargained for and agreed to a forum selection clause choosing this court to resolve disputes. CYPTT cannot now be heard to claim that it had its fingers crossed. District of Columbia law governs this case and the parties have agreed, in two separate sections of the Agreement, to litigate in this Court.[10] Accordingly, the argument must fail, and the motion to transfer for forum non conveniens denied.


III.    CYPTT agreed to submit to the exclusive jurisdiction of this Court, and arbitration is not appropriate.

CYPTT also moves to dismiss in favor of arbitration. This motion must also be denied.

Determination of whether an issue is arbitrable is for the court to decide, not an arbitrator. Howsam v. Dean Witter Reynolds, 537 U.S. 79 (2002); Booker v. Robert Half Int'l Inc. 315 F.Supp.2d 94 (D.D.C. 2004). The Novation Agreement contains a forum selection clause selecting this court as the proper forum for resolution of disputes.

The Supreme Court has repeatedly held that forum selection clauses must be upheld in international disputes. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972). In order to overcome a forum selection clause, the party seeking to avoid the

---

[10]    Indeed, even if this Court were to invalidate the forum selection clause, it is difficult to understand CYPTT's claims of inconvenience. Neither party has witnesses or documents in Paris, CYPTT's preferred forum. The location of documents is largely irrelevant: documents today are almost uniformly transmitted electronically, and the burden of transmitting them to Paris or Washington is identical and minimal. As to witnesses, Intelsat, as plaintiff, presumes that any discovery deposition it wishes to take of CYPTT personnel will, under the rules of court, take place at CYPTT's headquarters, requiring the inconvenience only of counsel for Intelsat. Most of Intelsat's witnesses and documents are in the District of Columbia or Bermuda.

clause's effect must show that enforcement would be unreasonable and unjust, or that the clause is invalid for fraud or overreaching. Id. at 15. CYPTT has made no such showing here. Accordingly, the parties' choice of this court as the "exclusive" jurisdiction for resolution of issues relating to the Agreement must be upheld. See also Marra v. Papandreou, 216 F.3d 1119 (D.C.Cir. 2000); Overseas Partners, Inc. v. PROGEN Musasirlik ve Yoneti Hizmetleri. Ltd., 15 F.Supp.2d 47 (D.D.C. 1998) (any obstacles to enforcement of forum selection clause were foreseeable by the parties at the time they agreed to the clause).

It is a fundamental matter of law that a party cannot be forced to arbitrate when it has not agreed to do so. AT&T Technologies, Inc. v. Communication Workers, 475 U.S. 643 (1986). Nor can a party be forced to arbitrate against its will if an arbitration clause permits but does not require arbitration. Summit Packaging Systems, Inc. v. Kenyon & Kenyon, 273 F.3d 9 (1st Cir. 2001).

Federal law does not require parties to arbitrate where they have not agreed to do so, but only requires that courts enforce the arbitration clause according to its terms. Volt Information Science, Inc. v. Board of Trustees of Leland Stanford Jr. University, 489 U.S. 468 (1989). Arbitration is a matter of consent, not coercion, and parties are free to structure their agreements as they see fit. A court may not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated. Id. at 294. The judicial task is not to foist arbitration on those who have not agreed to it, but to implement the *parties'* preferences between judicial and arbitral forums, not to displace that choice with the court's. Stone v. Doerge, 328 F.3d 343, 345-6 (7th Cir. 2003).

19

CYPTT cites cases which do not support its motion, but fails to describe their actual holdings. In Republic Steel Corp. v. Maddox, cited by CYPTT at page 28 of its Memorandum, the Supreme Court held that an arbitration clause in a collective bargaining provision required mandatory arbitration *unless the parties expressly agreed that arbitration was not the exclusive remedy.* 379 U.S. 650, 657-8 (1965). CYPTT oddly does not mention that essential part of the holding of its cases. In other words, if the contract between the parties contains both arbitration and litigation provisions, arbitration is not required, but optional. Accord, Held v. Nat'l Railroad Passenger Corp., 101 F.R.D. 420 (D.D.C. 1984). In this case, the parties have agreed to submit to the "exclusive jurisdiction" of this Court. Novation Agreement, ¶ 9. Thus, Republic Steel and its progeny indisputably hold that arbitration is not mandatory in this case.

Even the optional arbitration clause contained in the Terms and Conditions expressly provides for litigation.

> Any party to this Agreement may seek from a court of the District of Columbia or a United States Federal Court sitting in the District of Columbia any interim relief, including injunctive relief or confirmation of any arbitral award rendered in whole or in part…

Furthermore, the Terms and Conditions specifically provide in paragraph 22:

> All rights and remedies conferred hereunder or otherwise shall be cumulative and may be exercised individually or concurrently.

Thus, the right of a party to arbitrate in paragraph 17 of the Terms and Conditions, and the right of a party to litigate under that same paragraph and under paragraph 9 of the Novation Agreement are cumulative, and plaintiff is free to choose either forum.

Indeed, this Court in Bombardier Corp. v. National Railroad Passenger Corp., 298 F.Supp.2d 1, 5-6 (D.D.C. 2002) reached the same conclusion. The contract before the

Court contained both an alternative dispute resolution clause and a clause permitting

litigation. The alternative dispute resolution clause stated that disputes "may" be referred

to the ADR procedure. However, the contract also contained a clause permitting

litigation in the District of Columbia. This Court stated:

> By using the words "may" and "or," the Contract suggests that the
> Contractor may permissibly choose *not* to engage in the dispute resolution
> procedures of Article 32. Construed together, it appears that the
> Contractor is free to pursue its claims in court, with first engaging in
> dispute resolution under Article 32.

Id. at 5 (emphasis in original).

CYPTT's argument that arbitration is mandatory can only be maintained if one

chooses to ignore the plain language of the contract and the very precedents that CYPTT

cites. CYPTT's argument cannot bear the lightest of scrutinies. Indeed, given that

paragraph 22 makes all remedies cumulative, even if CYPTT were permitted to substitute

"shall" for "may" in the arbitration clause, arbitration still would not be mandatory: either

party could choose to litigate under paragraph 9 of the Novation Agreement or choose to

arbitrate under paragraph 17 of the Terms and Conditions. See also Group

Hospitalization and Medical Services, Inc. v. Stubbs, 1990 WL 183576 (D.D.C.

November 1, 1990) (motion to stay in favor of arbitration denied; "may" in arbitration

clause means arbitration is optional).

In this Agreement, the parties consented in the unmistakable terms of paragraph 9

of the Novation Agreement, the main body of this contract, that the parties could litigate

their disputes in this Court. Paragraph 17 of the Terms and Conditions, an attachment to

the Novation Agreement, also provides for the parties may, but are not required to,

arbitrate in the ICC. Plaintiff was and is perfectly within its contractual rights to bring

this lawsuit in this Court, and CYPTT expressly agreed to the <u>exclusive</u> jurisdiction of this Court. CYPTT's argument that the Court should ignore the unmistakable language of the Agreement and rule that arbitration is mandatory, rather than optional, is simply frivolous and unsupported by any authority. <u>See</u> <u>Republic Steel</u>, 379 U.S. 650 (1965).

It is well established that optional arbitration clause are just that – optional. In <u>Summit</u>, supra, the clause at issue provided that the parties could either litigate in New York courts or arbitrate in New York. The Second Circuit ruled that the plain language of the clause made arbitration permissive, not mandatory. 273 F.3d at 13. <u>See</u> <u>also</u> <u>BCS Insurance Co. v. Wellmark, Inc</u>., 410 F.3d 349 (7th Cir. 2005) (arbitration optional).

Arbitration is a matter of consent, not coercion, and parties are free to structure their agreements as they see fit. <u>Volt</u>, 489 U.S. at 294. A court may not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated. <u>Id</u>. Yet that is precisely what CYPTT asks this Court to do: to foist mandatory arbitration on those who have not agreed to it. The Court should respect the *parties'* preferences between judicial and arbitral forums, as plainly delineated in the Agreement, and not to displace that choice with another. <u>Cf.</u> <u>Stone v. Doerge</u>, 328 F.3d 343, 345-6 (7th Cir. 2003). <u>See</u> <u>Satcom Int'l Group PLC v. Orbcomm Int'l Partners</u>, 49 F.Supp. 2d 331 (S.D.N.Y. 1999), (injunction staying arbitration issued where arbitration was optional, not mandatory, and parties were properly before the court).

For the foregoing reasons, Plaintiff prays this Court deny CYPTT's Motion To Dismiss The Complaint, Or In The Alternative, To Compel Arbitration, and for such other relief as to the Court seems proper.

22

INTELSAT GLOBAL SALES AND MARKETING, LTD.
By Counsel



_____/s/David I. Bledsoe_____
David I. Bledsoe
Bar Number 422596
300 North Washington Street
Suite 700
Alexandria, VA  22314
703-379-9424
703-684-1851(fax)

23

## CERTIFICATE OF SERVICE

I certify that on December 27, 2006, a copy of the foregoing pleading was filed electronically.  Notice of this filing will be sent to the following parties by operation of the Court's electronic filing:

Kevin B. Clark, D.C. Bar No. 289421
Joseph G. Davis, D.C. Bar No. 441479
WILLKIE FARR & GALLAGHER LLP
1875 K Street, N.W.
Washington, D.C. 20006

By: /s David I. Bledsoe_____
      David I. Bledsoe