**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____ )
                                  )
**INTELSAT GLOBAL SALES AND**     )
**MARKETING, LTD.,**              )
                                  )
           **Plaintiff,**         )
                                  )
           **v.**                 )     **Civil Action No. 06-897 (RWR)**
                                  )
**COMMUNITY OF YUGOSLAV POSTS**   )
**TELEGRAPHS AND TELEPHONES,**    )
                                  )
           **Defendant.**         )
_____ )

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Intelsat Global Sales and Marketing, Ltd. ("Intelsat Global") seeks damages for breach of contract and unjust enrichment against defendant Community of Yugoslav Posts Telegraphs and Telephones ("CYPTT"), asserting jurisdiction under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 <u>et</u> <u>seq.</u> Denying that it is an organ of a foreign sovereign, CYPTT has moved to dismiss the complaint for lack of subject-matter jurisdiction, among other reasons. Intelsat Global opposes the motion and seeks jurisdictional discovery. Because Intelsat Global has set forth sufficiently concrete and non-conclusory allegations of CYPTT's governmental status for purposes of jurisdiction under the FSIA, but additional evidence may confirm or disprove the presence of such subject-matter jurisdiction, Intelsat Global's request for jurisdictional

-2-

discovery will be granted and CYPTT's motion to dismiss will be denied without prejudice.

BACKGROUND

Intelsat Global is a United Kingdom corporation. CYPTT is a Serbia and Montenegro corporation that entered into a contract with the International Telecommunications Satellite Organization ("INTELSAT"), for INTELSAT to provide telecommunication services to CYPTT in exchange for payment. In 2001, CYPTT entered into a novation agreement with Intelsat Global in which Intelsat Global assumed all of the rights and obligations of INTELSAT under the original contract. Intelsat Global is now seeking payment from CYPTT, claiming that Intelsat Global provided the services mandated under the contract.

CYPTT moved to dismiss for lack of subject-matter jurisdiction, arguing that because it is not an instrumentality of Serbia and Montenegro, but a private business association, there is no subject-matter jurisdiction over Intelsat Global's claims against it. In its opposition, Intelsat Global alleges that there is subject-matter jurisdiction over its claims against CYPTT under 28 U.S.C. § 1330 because CYPTT is an instrumentality of Serbia and Montenegro and has waived its immunity from suit under the FSIA. Accordingly, Intelsat Global requests jurisdictional discovery to supplement the factual grounds for

-3-

this court's exercise of jurisdiction over the case. (See Pl.'s
P. & A. in Opp'n to Mot. to Dismiss ("Pl.'s Opp'n") at 13-14.)

DISCUSSION

On a motion to dismiss under Federal Rule of Civil Procedure
12(b)(1) for lack of subject-matter jurisdiction, the plaintiff
bears the burden of establishing that jurisdiction is proper.
See Larsen v. U.S. Navy, 486 F. Supp. 2d 11, 18 (D.D.C. 2007)
(citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561
(1992)). Because subject-matter jurisdiction focuses on a
court's power to hear a claim, a court must view the plaintiff's
factual allegations with scrutiny and is not limited to the
allegations contained in the complaint. Larsen, 486 F. Supp.
at 18. Instead, when considering the Rule 12(b)(1) motion to
dismiss, the court may consider materials beyond the pleadings to
resolve disputed jurisdictional facts. Tootle v. Sec'y of the
Navy, 446 F.3d 167, 174 (D.C. Cir. 2006).

"The district court retains considerable latitude in
devising the procedures it will follow to ferret out the facts
pertinent to jurisdiction, but it must give the plaintiff ample
opportunity to secure and present evidence relevant to the
existence of jurisdiction." Phoenix Consulting, Inc. v. Republic
of Angola, 216 F.3d 36, 40 (D.C. Cir. 2000) (internal quotations
and citation omitted). Accordingly, a court should allow for
limited jurisdictional discovery if a plaintiff shows a non-

-4-

conclusory basis for asserting jurisdiction and a likelihood that additional supplemental facts will make jurisdiction proper.[1] See, e.g., Millicom Int'l Cellular, S.A. v. Republic of Costa Rica, Civil Action No. 96-315 (RMU), 1997 WL 527340, at *1 (D.D.C. Aug. 18, 1997). At minimum, a plaintiff must "allege some facts upon which jurisdiction could be found after discovery is completed." Doe I. v. State of Israel, 400 F. Supp. 2d 86, 122 (D.D.C. 2005).

The FSIA provides the exclusive basis for a court's jurisdiction over a foreign state. Hartford Fire Ins. Co. v. Socialist People's Libyan Arab Jamahiriya, Civil Action No. 98-3096 (TFH), 2007 WL 1876392, at *3 (D.D.C. June 28, 2007) (citing Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428,

---

[1] Ordinarily, "[i]n order to avoid burdening a sovereign that proves to be immune from suit, jurisdictional discovery . . . should not be authorized at all if the defendant raises . . . '[an]other non-merits ground[] such as forum non-conveniens [or] personal jurisdiction[,]' the resolution of which would impose a lesser burden upon the defendant[.]" Phoenix Consulting, Inc., 216 F.3d at 40 (citing In re Papandreou, 139 F.3d 247, 254-55 (D.C. Cir. 1998)). Here, CPYTT does argue in the alternative that the court should dismiss on grounds of forum non conveniens and lack of personal jurisdiction. However, since CPYTT repeatedly insists that it is not an instrumentality of a sovereign, there is no risk of running afoul of the rule stated in Phoenix Consulting, Inc. and In re Papandreou, which was expressly designed to afford special solicitude to sovereign states. CYPTT's subsidiary argument that none of FSIA's jurisdictional exceptions would apply "even if this Court finds that CYPTT is an instrumentality of a foreign state," see Stmt. of P. & A. in Support of Def. CYPTT's Mot. to Dismiss the Compl. ("Mot. to Dismiss") at 16, should not resurrect a solicitude that CYPTT does not invoke for a sovereign status it disavows.

-5-

434 (1989)).  Section 1330 establishes jurisdiction in civil
actions against foreign states that have waived their immunity to
suit under the FSIA.  See 28 U.S.C. § 1330.[2]

     For the purposes of the FSIA, a foreign state "includes a
political subdivision of a foreign state or an agency or
instrumentality of a foreign state . . . ."  28 U.S.C. § 1603(a).
"An 'agency or instrumentality of a foreign state' means any
entity -- (1) which is a separate legal person, corporate or
otherwise, and (2) which is an organ of a foreign state or
political subdivision thereof, or a majority of whose shares or
other ownership interest is owned by a foreign state or political
subdivision thereof, and (3) which is neither a citizen of a
State of the United States . . . nor created under the laws of
any third country."  28 U.S.C. § 1603(b).  Section 1603(b)
"requires that instrumentality status be determined at the time
suit is filed."  Dole Food Co. v. Patrickson, 538 U.S. 468, 478
(2003).

     CYPTT argues that it is not an agency or instrumentality of
Serbia and Montenegro because it "is not an organ of a foreign

_____

     [2] "The district court shall have original jurisdiction
without regard to amount in controversy of any nonjury civil
action against a foreign state as defined in section 1603(a) of
this title . . . as to any claim for relief in personam with
respect to which the foreign state is not entitled to immunity
either under sections 1605-1607 of this title . . . or under any
applicable international agreement."  28 U.S.C. § 1330(a).

-6-

state or political subdivision thereof, and because it is not owned by a foreign state or political subdivision thereof[.]" (Mot. to Dismiss at 12-13.)  The FSIA's "legislative history suggests that Congress intended the terms 'organ' and 'agency or instrumentality' to be read broadly." Gates v. Victor Fine Foods, 54 F.3d 1457, 1460 (9th Cir. 1005) (referring to H.R. Rep. No. 9401487, 94th Cong. 2d Sess. (1976), reprinted at 1976 U.S.C.C.A.N. 6604, 6614[3]).  There is no definitive test to determine whether an entity is an organ of a foreign government. See Peninsula Asset Mgmt. v. Hankook Tire Co., 476 F.3d 140, 143 (2d Cir. 2007).  The factors commonly considered include:

> (1) whether the foreign state created the entity for a national purpose; (2) whether the foreign state actively supervises the entity; (3) whether the foreign state requires the hiring of public employees and pays their salaries; (4) whether the entity holds exclusive rights to some right in the foreign country; and (5) how the entity is treated under foreign state law.

Id. at 143; see also EIE Guam Corp. v. Long Term Credit Bank of Japan, Ltd., 322 F.3d 635, 640 (9th Cir. 2003).

---

[3]  The House Report provides that "entities which meet the definition of an 'agency or instrumentality of a foreign state' could assume a variety of forms, including a state trading corporation, a mining enterprise, a transport organization such as a shipping line or airline, a steel company, a central bank, an export association, a governmental procurement agency or a department or ministry which acts and is suable in its own name." H.R. Rep. No. 9401487, 94th Cong. 2d Sess. (1976), reprinted at 1976 U.S.C.C.A.N. 6604, 6614.

-7-

Intelsat Global argues that CYPTT's current director general, Milan Jankovic, has made representations that CYPTT was an organ of the Serbia and Montenegro government, thereby admitting that CYPTT is an organ of a foreign government for the purposes of the FSIA. In support of its contention, Intelsat Global cites an article co-authored by Jankovic in 2000 which states that CYPTT "is involved in regulatory issues." (Pl.'s P. & A. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n"), Ex. B., "Yugoslav Telecommunications Markets: Vision and Potential," IEEE Communications Magazine at 112.) Intelsat Global also cites a letter written by Jankovic in November of 2005 asserting that CYPTT was managing the Serbia and Montenegro government's shares in INTELSAT. (See Pl.'s Opp'n, Ex. Aff. of Yuli Wexler, Letter from Jankovic to Phillip Spector, VP INTELSAT, Nov. 30, 2005, at 1.) In addition to these representations, Intelsat Global provides a report issued in August of 2005 which indicates that CYPTT published an Official Gazette containing the telecommunication rules of Serbia and Montenegro. (See Pl.'s Opp'n, Ex. C at 86, 92.) Intelsat Global also notes that CYPTT was selected in 1971 as the Yugoslavian representative to a multilateral INTELSAT treaty. (See Pl.'s Opp'n at 11.)

CYPTT insists that despite these assertions, Intelsat Global has not presented facts to support its allegation that CYPTT was a governmental organ of Serbia and Montenegro at the time

-8-

Intelsat Global filed its complaint in May 2006.  (See Def.'s Reply in Support of Mot. to Dismiss ("Def.'s Reply") at 8.) Rather, CYPTT argues, all that Intelsat Global claims to show is that CYPTT operated as an organ of the government *prior* to the date on which the complaint was filed here, thereby failing to meet the standard stated by the Supreme Court in Dole, 538 U.S. at 478.  However, showing evidence of instrumentality status only prior to the filing of the complaint does not mean that Intelsat Global has provided "*no evidence* that CYPTT was an organ of the government[,]" see Def.'s Reply at 8, at the time the complaint was filed.  To the contrary, the facts presented by Intelsat Global -- the most recent of which dates to less than six months before the complaint was filed -- provide circumstantial evidence of CYPTT's governmental status at the time of the filing of the complaint, as such status could be inferred from recent prior governmental status.[4]  While it may be that Intelsat Global has presented no direct evidence of CYPTT's current governmental status, proof of prior governmental status could make it more likely than not that current governmental status exists.

---

[4]  Specifically, in a letter dated November 30, 2005, less than six months before the complaint was filed on May 11, 2006, Jankovic stated that CYPTT's shares in Intelsat should be repaid to CYPTT "being obliged to immediately pay these funds in the budget of the Government as real owner of these shares.  The Community of Yugoslav PTT was entitled by the government to manage the mentioned shares."  (Pl.'s Opp'n, Ex. Aff. of Yuli Wexler, Letter from Jankovic to Phillip Spector, VP INTELSAT, Nov. 30, 2005, at 1.)

-9-

Thus, far from being "patently inadequate[,]" <u>Doe I</u>, 400 F. Supp. at 122, Intelsat Global's specific and non-conclusory allegations warrant "a period of circumscribed jurisdictional discovery that will allow the parties to resolve the disputes of material fact reflected in their submissions." <u>Owens v. Republic of Sudan</u>, 374 F. Supp. 2d 1, 17 (D.D.C. 2005).

<u>CONCLUSION</u>

Intelsat Global has made specific and non-conclusory allegations of CYPTT's status as an agent or instrumentality of Serbia and Montenegro as defined by the FSIA. Jurisdictional discovery may aid in assessing whether CYPTT held such status at the time the complaint was filed in this case. Accordingly, it is hereby

ORDERED that the plaintiff's request for jurisdictional discovery be, and hereby is, GRANTED. It is further

ORDERED that the parties confer and submit by February 28, 2008 a joint report proposing a plan for conducting discovery limited to facts bearing upon the court's subject matter jurisdiction. A proposed order shall accompany the joint report. It is further

ORDERED that the defendant's motion [10] to dismiss be, and hereby is, DENIED WITHOUT PREJUDICE to defendant renewing its motion after jurisdictional discovery has concluded.

-10-

SIGNED this 28th day of January, 2008.


                                        _____/s/_____
                                        RICHARD W. ROBERTS
                                        United States District Judge